```
JOHN WALSHE MURRAY (074823)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone:  (650) 852-9000; (408) 907-9200
Facsimile:  (650) 852-9244
Email: jwmurray@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor
```

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>ZF MICRO SOLUTIONS, INC.,<br>A Delaware corporation<br><br>Debtor.<br><br>926 Industrial Avenue<br>Palo Alto, CA 94303<br><br>Employer Tax I.D. No.: 30-0035122 | Case No. 10-60334-ASW-11<br><br>Chapter 11<br><br>Date: November 8, 2010<br>Time: 1:45 p.m.<br>Place: United States Bankruptcy Court<br>280 S. First St., Room 3020<br>San Jose, CA 95113<br>Judge: Honorable Arthur S. Weissbrodt |

### DECLARATION OF DAVID L. FELDMAN IN SUPPORT OF MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

I, David L. Feldman, hereby declare that:

1. I am the Chief Executive Officer of ZF Micro Solutions, Inc., (the "Debtor") and am authorized to make this Declaration on its behalf. I have personal knowledge of the facts set forth in this Declaration and if called upon to testify, I would and could competently testify to the following:

2. This Declaration is filed in support of the MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL (the "Motion").

3. The Debtor is a privately held fabless semiconductor company with its principal place of business in Palo Alto, California. I founded and incorporated the Debtor in Delaware on January 28, 2002. Prior to the Debtor's incorporation, I had founded and incorporated ZF Micro Devices,

Inc., ("Devices") in California in July of 1995. In approximately late 2001 and early 2002, Devices' sole secured creditor, Gary Kennedy ("Kennedy"), who was also a Devices' Board member sitting by designation of investor Sands Brothers Venture Capital LLC ("Sands"), began foreclosure proceedings. On February 28, 2002, Kennedy purchased and acquired all of the assets of Devices by successfully credit bidding at the foreclosure sale. Immediately following the foreclosure sale to Kennedy, the Debtor, who had unsuccessfully bid at the sale, purchased the majority of Devices' assets from Kennedy and thereafter commenced operations on or about March 1, 2002.

4. In 1995, Devices began manufacturing and marketing a family of products based on an award-winning computer module called the OEM module Single Component Computer. These devices were the most highly integrated, PC-compatible controller modules in the embedded systems market. They included full motherboard hardware and software functionality in a single, highly reliable component smaller than a credit card.

5. In 2000, Devices then took this small form factor to the next level and combined full x86 PC functionality together with its patented fail-safe technology, into a single chip, the ZFx86™ "PC-on-a-Chip." This device, just 1.4 inches square, represented the next level of integration of PC functionality. ZFx86™ is the only chip with a built-in FailSafe® mechanism for restoring operation after a system failure. The Intel x86 compatible ZFx86™ chip runs most PC software without modification and is bundled with a full PC BIOS and Linux O/S - and it boots by simply applying power.

6. The Debtor outsources all chip layout, manufacturing, logistics and test functions while it supports all system architecture, technical support, sales and marketing internally. Prior to the foreclosure, Devices outsourced the chip layout, manufacturing, logistics and test functions to National Semiconductor Corporation ("NSC"). One of the assets acquired by the Debtor from Kennedy was the contract with NSC.

7. In March of 2002, NSC advised the Debtor that it would not honor the contract and would not manufacture the ZFx86™ for the Debtor. The Debtor filed a lawsuit in Santa Clara Superior Court against NSC. The suit went to a jury trial wherein the Debtor was awarded approximately $30 Million dollars. The court thereafter ordered a new trial based on a faulty jury

instruction. The Debtor had exhausted its financial resources during the first trial and was unable to fund a new trial without additional capital contributions.

8. The Debtor thereafter solicited capital contributions from all of the original Devices shareholders ("Devices Shareholders") to fund the ongoing litigation. As part of the solicitation, the Debtor indicated that if the new trial were successful and after attorneys' fees and litigation costs were paid, those Devices Shareholders who invested in the Debtor to fund the ongoing litigation (the "Debtor Investors") would receive approximately a 10X return on their investment into the Debtor to fund the new trial, and if any funds remained then Devices' creditors would be paid and finally a pro-rata share would go to all Devices Shareholders. Thirty-four (34) of the eighty (80) Devices Shareholders became Debtor Investors by providing capital to the Debtor, and the Debtor was able to proceed with the new trial. Effective January 31, 2005, the Debtor finalized a settlement agreement with NSC ending an almost 3 year legal dispute wherein the Debtor was to receive approximately $20 Million dollars in cash and certain intellectual property. The settlement proceeds were deposited into the Debtor's attorney's trust account on approximately February 1, 2005, and thereafter were distributed to the Debtor Investors in accordance with their level of investment and the Debtor's promise of a 10X return (the "NSC Settlement Distributions"). The remainder of the funds, approximately $3.7 Million dollars, was then deposited into the Debtor's general operating account. All of the Debtor's outstanding creditor claims were paid in full before the NSC Settlement Distributions were made in February 2005.

9. On February 14, 2005, TAT, Sands and SB New Paradigm Associates LLC ("SB" and with Sands, the "Sands Parties" and with Sands and TAT, the "Plaintiffs") filed suit in Santa Clara County Superior Court against the Debtor and the Debtor Investors alleging, among other things, that the NSC Settlement Distributions made to the Debtor Investors were fraudulent transfers (the "TAT Suit"). All of the Plaintiffs were Devices Shareholders but none of the Plaintiffs contributed capital to the Debtor or ever became Debtor Investors. The Debtor filed a mandatory counterclaim and the TAT Suit was eventually consolidated with the counterclaim. The TAT Suit proceeded to a three phase trial wherein during phase one the court determined that the Plaintiffs and the Debtor had entered into certain enforceable contracts. During the second phase, a jury returned a

JLF
K:\ZR Micro Solutions\Pld\Mot 1st Day\Cash Collateral\Feldman Dec v4.doc
3  DECLARATION OF DAVID L. FELDMAN IN SUPPORT OF MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

Case: 10-60334   Doc# 20-1   Filed: 10/11/10   Entered: 10/11/10 17:44:29   Page 3 of 10

verdict that the Debtor had breached its contract with the Plaintiffs on February 5, 2005 causing harm to the Plaintiffs in the aggregate amount of $4,390,506.03. During the third phase of the trial, on May 12, 2010 the jury returned a verdict that each of the NSC Settlement Distributions made to the Debtor Investors constituted actual fraudulent transfers. Thereafter on June 10, 2010, the court entered judgment against the Debtor and the Debtor Investors, and on August 23, 2010, the court entered a first amended judgment in favor of the Plaintiffs and against the Debtor as follows (the "<u>TAT Judgment</u>"): Judgment in favor of TAT in the amount of $4,460,447.70, plus costs; Judgment in favor of the Sands Parties in the amount of $2,135,859.63, plus costs. The court also entered judgments against the individual Debtor Investors in favor of the Plaintiffs in the respective amounts received as part of the NSC Settlement Distributions.

10. Upon information and belief, on June 14, 2010, TAT filed an Abstract of Judgment against the Debtor in the amount of $4,550,447.70. On June 17, 2010, TAT requested and the court entered a Writ of Execution against the Debtor for $4,550,472.70, plus cost and daily interest. On June 29, 2010, TAT filed a Notice of Levy against the Debtor's bank account and obtained approximately $5,800 from the Debtor's account as a result thereof. TAT has since filed a partial satisfaction of judgment to reflect the reduction of its judgment lien by the approximately $5,800 obtained from the account levy.

11. The Debtor has appealed the TAT Judgment which appeal is pending.

12. The Debtor generates approximately $10,000 to $15,000 a month in gross revenue. The $3.7 Million dollars the Debtor received out of the NSC Settlement Distributions was fully exhausted to cover operating costs and to defend against the TAT Suit as well as to prosecute suits against the Debtor's Director's and Officer's insurance carrier relating to refusals to defend. Both the TAT Suit and the suit against the Debtor's insurance carrier are on appeal. The Debtor has had to suspend salaries for all employees and terminate or furlough all employees. In addition, the Debtor has borrowed approximately $700,000.00 from its shareholders to maintain operations and defend and prosecute the various suits.

13. The Debtor does not have sufficient assets to satisfy the TAT Judgment much less satisfy the TAT Judgment and continue operations. As such, if the Debtor is not successful on the

appeal it will be forced to liquidate. On the other hand, if the Debtor is successful on the appeal, it will be able to start anew and focus solely on product development, marketing and income generation.

14. Debtor's primary assets are its accounts receivable, its inventory and its intellectual property. The Debtor generates approximately between $10,000 and $15,000 a month in receivables. The cost value of the inventory, as of the Filing Date, was approximately $88,000.00 however the Debtor estimates its inventory's liquidation value is approximately $22,000.00. The Debtor's equipment was valued at approximately $3,500 (book value) at the time of filing. The value of the intellectual property is unknown at this time.

15. The Debtor's largest creditor is TAT, who purportedly holds a judgment lien on the Debtor's accounts receivable, among other property but excluding the intellectual property, in the amount of approximately $4.5 Million dollars plus interest and costs. The Sands Parties also have an unsecured judgment against the Debtor in the approximate amount of $2.14 Million dollars plus interest and costs.

16. The Debtor's anticipated go forward operational administrative liabilities include: real property lease payments of approximately $4,600.00 per month; utility costs of approximately $800.00 per month; insurance costs of approximately $1,800.00 per month; and approximately $5,500.00 per month in salary and employee benefits for one consultant who the Debtor plans to engage. I, among other shareholders, have loaned the Company hundreds of thousands of dollars to fund operations and most recently I loaned the Company $50,000.00 on September 30, 2010 to cover shortfalls in operations for the month of October and early November and to cover assembly of wafers previously purchased.

17. Upon information and belief, recent searches of the records of the California Secretary of State disclose the following liens and security interests on the following pre-petition property under the search name ZF Micro Solutions, Inc.

| NAME | DATE OF FILING | FILING AND RELEVANT COLLATERAL COVERAGE |
|------|----------------|------------------------------------------|
| TAT | 6/16/2010 | JL-1: Equipment and inventory located in California and Accounts Receivable. |

18. Upon information and belief, the Debtor's searches of records of the Delaware Secretary of State did not disclose any effective financing statements or other documents

19. The Debtor is currently operating its business in the ordinary course and under the daunting pressure of pending appeals in the TAT and insurance carrier case. During this Chapter 11 case, the Debtor will continue to operate its business as a debtor in possession and will file a Chapter 11 plan. If the TAT appeal is successful, the Debtor will free itself of the ongoing litigation costs and the Chapter 11 plan will address the remainder of the Debtor's unsecured debt, its capital structure and the Debtor's emergence from Chapter 11. The Debtor will be able to focus its efforts on marketing, product development and operating at a profit. If the TAT appeal fails, the Debtor will be forced to liquidate.

20. Prior to the commencement of the case, the Debtor, in the ordinary course of business, would sell inventory and collect its accounts receivable to fund operations from its general operating account. As of the Filing Date, the Debtor believes that there was approximately $2,100.00 of proceeds of accounts receivable in the Debtor's general operating account and the Debtor anticipates collecting and segregating an additional $12,000.00 in proceeds on or before November 8, 2010.

21. The Debtor requests approval for use of cash collateral in the amounts and for the purposes described under the line items and time periods set forth in the Budget.

22. The Debtor has developed the Budget which provides for the period commencing on the Filing Date and continuing through the end of March 2011. The Debtor requests approval for use of cash collateral in the amounts of and for the purposes set forth in the Budget for the Cash Collateral Period. The Debtor must pay ongoing operating expenses and anticipates that it will have exhausted all non cash collateral funds by mid November 2010.

23. The ability of the Debtor to obtain sufficient working capital and liquidity through the use of cash collateral is vital to the continuation of the Debtor's business and its reorganization. The Debtor requires suppliers and vendors to fulfill orders to continue its business.

24. The Debtor is unable to obtain unsecured financing from any source and the use of cash collateral to continue the ongoing operations through the confirmation of a plan of

reorganization will preserve the going concern value of the Debtor and maximize the Debtor's ability to collect its accounts receivable, thus providing adequate protection to TAT. In its Budget, the Debtor anticipates that, on a monthly basis, it will be sell approximately $4,200.00 of inventory to generate $12,000.00 of receivables. The Debtor can only generate receivables by selling its inventory and in turn can only purchase its inventory by utilizing its receivables.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief, and that this Declaration was executed on October 11, 2010 at Palo, Alto, California.

*/s/David L. Feldman*
David L. Feldman

```
 1  JOHN WALSHE MURRAY (074823)
    JENNY L. FOUNTAIN (226241)
 2  MURRAY & MURRAY
    A Professional Corporation
 3  19400 Stevens Creek Blvd., Suite 200
    Cupertino, CA 95014-2548
 4  Telephone:  (650) 852-9000; (408) 907-9200
    Facsimile:  (650) 852-9244
 5  Email: jwmurray@murraylaw.com
    Email: jlfountain@murraylaw.com
 6
    Attorneys for Debtor
 7
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**ZF MICRO SOLUTIONS, INC.,**<br>A Delaware corporation<br><br>Debtor.<br><br>926 Industrial Avenue<br>Palo Alto, CA 94303<br><br>Employer Tax I.D. No.: 30-0035122 | Case No. 10-60334-ASW-11<br><br>Chapter 11<br><br>Date:  November 8, 2010<br>Time:  1:45 p.m.<br>Place:  United States Bankruptcy Court<br>        280 S. First St., Room 3020<br>        San Jose, CA  95113<br>Judge:  Honorable Arthur S. Weissbrodt |

DECLARATION OF DAVID L. FELDMAN IN SUPPORT OF MOTION FOR
ORDER AUTHORIZING USE OF CASH COLLATERAL

EXHIBIT "A"

# ZF Micro Solutions, Inc.
## Profit & Loss Forecast Overview - January through December 2011

| | OCT 10 | NOV 10 | DEC 10 | JAN 11 | FEB 11 | MAR 11 | TOTAL OCT 10 - MAR 11 |
|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | |
| **Income** | | | | | | | |
| 43001 · Sales | 12,000.00 | 12,000.00 | 14,000.00 | 16,000.00 | 18,000.00 | 20,000.00 | 92,000.00 |
| **Total Income** | 12,000.00 | 12,000.00 | 14,000.00 | 16,000.00 | 18,000.00 | 20,000.00 | 92,000.00 |
| **Cost of Goods Sold** | | | | | | | |
| 50000 · Cost of Goods Sold | 4,200.00 | 4,200.00 | 4,900.00 | 5,600.00 | 6,300.00 | 7,000.00 | 32,200.00 |
| 50100 · Material Purchases | | 44,400.00 | | | | | 44,400.00 |
| 50300 · Freight | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 |
| **Total COGS** | 4,450.00 | 48,850.00 | 5,150.00 | 5,850.00 | 6,550.00 | 7,250.00 | 78,100.00 |
| **Gross Profit** | 7,550.00 | -36,850.00 | 8,850.00 | 10,150.00 | 11,450.00 | 12,750.00 | 13,900.00 |
| **Expense** | | | | | | | |
| 4000 · Reconciliation Discrepancies | | | | | | | 0.00 |
| 60000 · Engineering | | | | | | | 0.00 |
| 60100 · Contract Engineering | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 15,000.00 |
| 60200 · Engineering Salaries | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 60250 · Payroll Taxes @ 15% | 3,001.00 | 2,269.00 | 2,269.00 | 2,269.00 | 2,269.00 | 2,269.00 | 14,346.00 |
| 60275 · Employee Benefits | | | | | | | 0.00 |
| 60520 · Engineering Supplies | | | | | | | 0.00 |
| 70000 · Administration | | | | | | | |
| 70100 · Salaries | | | | | | | |
| 70150 · Officers Salaries | | | | | | | 0.00 |
| 70160 · Administration Salaries | | | | | | | 0.00 |
| 70170 · Accounting Salaries | | | | | | | 0.00 |
| 70200 · Payroll Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 70250 · Employee Benefits | | | | | | | 0.00 |
| 70275 · Paychex Service Fee | | | | | | | 0.00 |
| **Total 70100 · Salaries** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 70300 · Seminars | | | | | | | 0.00 |
| 70330 · Dues and Subscriptions | | | | | | | 0.00 |
| 70410 · Automobile Expense | | | | | | | 0.00 |
| 70430 · Meals | | | | | | | 0.00 |
| 70500 · Equipment Rental | 187.38 | 187.38 | 187.38 | 187.38 | 187.38 | 187.38 | 1,124.28 |
| 70520 · Supplies | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 25.00 | 150.00 |
| 70535 · Postage and Delivery | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 120.00 |
| 70570 · Computer Services | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,800.00 |

Case: 10-60334    Doc# 20-1    Filed: 10/11/10    Entered: 10/11/10 17:44:29    Page 9 of 10

12:00 PM
09/28/10
Accrual Basis

# ZF Micro Solutions, Inc.
## Profit & Loss Forecast Overview - January through December 2011

| | OCT 10 | NOV 10 | DEC 10 | JAN 11 | FEB 11 | MAR 11 | TOTAL OCT 10 - MAR 11 |
|---|---|---|---|---|---|---|---|
| 70710 · Public Relations | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 |
| 70800 · Rent | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 27,600.00 |
| 70810 · Repairs | | | | | | | 0.00 |
| 70815 · Miscellaneous | | | | | | | 0.00 |
| 70820 · Telephone | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,800.00 |
| 70825 · Utilities | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 |
| 70840 · Insurance | | | | | | | |
| 70844 · Directors Insurance | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 4,800.00 |
| 70846 · Work Comp | | | | | | | 0.00 |
| 70840 · Insurance - Other | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 5,400.00 |
| Total 70840 · Insurance | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 1,700.00 | 10,200.00 |
| 70850 · Depreciation Expense | | | | | | | 0.00 |
| 70900 · Legal Fees* | | | | | | | 0.00 |
| 70905 · Accounting | | | | | | | 0.00 |
| 70910 · Consulting | | | | | | | 0.00 |
| 70915 · Outside Services | | | | | | | 0.00 |
| 70920 · Bank Service Charges | | | | | | | 0.00 |
| 70925 · Licenses and Permits | | | | | | | 0.00 |
| 70960 · Other Taxes | | | 25.00 | | | | 25.00 |
| Total Expense | 13,333.38 | 12,601.38 | 12,626.38 | 12,601.38 | 12,601.38 | 12,601.38 | 76,365.28 |
| Net Ordinary Income | -5,783.38 | -49,451.38 | -3,776.38 | -2,451.38 | -1,151.38 | 148.62 | -62,465.28 |
| Other Income/Expense | | | | | | | |
| Other Income | | | | | | | |
| 91000 · Other Income | 50,000.00 | | | | | | 50,000.00 |
| Total Other Income | 50,000.00 | | | | | | 50,000.00 |
| Other Expense | | | | | | | |
| 99210 · Income Taxes | | | 800.00 | | | | 800.00 |
| Total Other Expense | | | 800.00 | | | | 800.00 |
| Net Other Income | 50,000.00 | | -800.00 | 15,000.00 | 0.00 | 0.00 | 64,200.00 |
| Net Income | 44,216.62 | -49,451.38 | -4,576.38 | 12,548.62 | -1,151.38 | 148.62 | 1,734.72 |
| Beginning Cash | | | | | | | |
| Ending Cash | 51,825.62 | | | | | | |

* legal fees as approved (unknown)

Case: 10-60334   Doc# 20-1   Filed: 10/11/10   Entered: 10/11/10 17:44:29   Page 10 of 10