JOHN WALSHE MURRAY (074823)
JENNY L. FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**ZF MICRO SOLUTIONS, INC.,**<br>A Delaware corporation,<br><br>          Debtor.<br><br>926 Industrial Avenue<br>Palo Alto, CA 94303<br><br>Employer Tax I.D. No.: 30-0035122 | Case No. 10-60334-ASW-11<br><br>Chapter 11<br><br>Date: January 28, 2011<br>Time: 2:00 p.m.<br>Place: United States Bankruptcy Court<br>       280 S. First St., Room 3020<br>       San Jose, CA 95113<br>Judge: Honorable Arthur S. Weissbrodt |

**REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPITAL PARTNERS, LTD. IN OPPOSITION TO MOTION FOR ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF**

ZF Micro Solutions, Inc., a Delaware corporation, the debtor and debtor in possession herein (the "Debtor"), hereby replies (the "Reply") to the MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPITAL PARTNERS, LTD. IN OPPOSITION TO THE MOTION FOR ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF (the "Opposition"). The Reply is based on the DECLARATION OF DAVID L. FELDMAN IN SUPPORT OF REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPITAL PARTNERS, LTD. IN OPPOSITION TO THE MOTION FOR ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF (the "Feldman Declaration"), filed concurrently herewith, the related pleadings on file herein and other evidence as may be submitted orally or in writing to the Court at or before the hearing on the MOTION FOR ORDER EXTENDING THE EXCLUSIVE PERIODS DURING WHICH ONLY THE DEBTOR MAY FILE A PLAN AND SOLICIT ACCEPTANCES THEREOF (the "Motion").[1]

## I. INTRODUCTION

### Debtor has Demonstrated Sufficient Cause To Grant the Motion

The Debtor's Motion requests that the Court enter an order extending the Exclusivity Periods through and including April 1, 2012 for the Exclusive Filing Period and through and including June 1, 2012 for the Exclusive Solicitation Period. Debtor has demonstrated sufficient cause to grant the Motion and this Court should overrule the Opposition as the Opposition mischaracterizes the facts, fails to address all of the factors utilized by courts to determine whether cause exists, and relies on nonbinding and factually irrelevant case law. In addition, the Debtor has concerns over TAT's motivation for filing the Opposition, TAT's continuing obstructive positions and the resulting expenses incurred by the Debtor, all to the detriment of the Debtor's Estate.

### A. The TAT Appeal Is One Factor Supporting a Finding Of Cause.

The Opposition relies heavily on the case of *In re American Federation of Television and Radio Artists*, 30 B.R. 772 (S.D. NY 1983). TAT's reliance on *American Federation* is misplaced for multiple reasons. First, the *American Federation* opinion simply provides that the pendency of an appeal, in and of itself, does not constitute sufficient cause to grant an exclusivity extension. *See*

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Case: 10-60334  Doc# 70  Filed: 01/27/11  Entered: 01/27/11 13:39:24  Page 2 of 6

K:\ZF Mirco Solutions\Pld\Mot- Exclusivity\Reply\Replyv4.docx

REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPTIAL PARTNERS, LTD. IN OPPOSITION TO . . . .

1

*id* at 774. Pending litigation however may be one factor that supports an extension. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410 (E.D. NY. 1989) ("a pending appeal, along with the consideration of other factors, may lead to a finding of cause for extending the exclusivity period.") (citing *United Press Internat'l, Inc.*, 60 B.R 265, 270 (Bankr. D. Colo. 1986)); *see also In re Texaco, Inc.*, 76 B.R. 322, 325 (Bankr. S.D.N.Y. 1987).

Second, TAT incorrectly alleges that the Debtor's sole reason for seeking the exclusivity extension is because the TAT Judgment is on appeal. This is untrue. To clarify, one of the reasons the Debtor is seeking the extension is because it is unnecessary and impractical to incur the expense of formulating, filing and soliciting a plan at this time. The outcome of the TAT Appeal will affect whether a plan is necessary and, if so, plan terms and creditor payouts, as it may either solidify or eliminate approximately $6.5 Million in unsecured claims. As such, any plan formulated at this time would either require multiple revisions as the TAT Appeal is decided or must contain multiple alternatives, the implementation of which would be dependent upon the outcome of the TAT Appeal, among other things. Thus, efficiency, economy and preservation of the Estate is the driving force behind the Debtor's Motion.

Third, in addition to the TAT Appeal, the Cross Action is also pending, the outcome of which will affect plan terms and payout. If the Debtor is successful in the Cross Action, TAT could be liable to the Estate for millions of dollars. Again, any plan formulated now would be a bare bones plan with multiple place holders and alternative terms dependent upon the resolution of the TAT Appeal and the Cross Action. It would be impractical to submit such an uncertain plan to creditors and it would only cause unnecessary expense to the Estate and confusion in the creditor body.

**B.     The Size of This Case Supports Granting An Extension**

TAT's argument that an extension is not warranted because this case is not "unusually large" should be overruled. TAT fails to address the case law and legislative history on point that a bankruptcy estate of epic proportions is not a prerequisite to the granting of an extension of the exclusivity periods based on size and complexity. *See In re United Press Int'l.*, 60 B.R. 265, 270 (Bankr. D.D.C. 1986). "Referring to the House Report to the 1978 Bankruptcy Act (the 'House

Case: 10-60334   Doc# 70   Filed: 01/27/11   Entered: 01/27/11 13:39:24   Page 3 of 6

K:\ZF Mirco Solutions\Pld\Mot- Exclusivity\Reply\Replyv4.docx     2     REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPTIAL PARTNERS, LTD. IN OPPOSITION TO . . . .

Report'), Courts note that 'cause' may be found if there is "an unusually large *or unusually small case . . . .*" *In re Gibson & Cushman Dredging Corp.*, 101 B.R. at 409 (emphasis added) (citations omitted). As was previously mentioned in the Motion, in the case of *In re Perkins,* the court found that an extension was justified where there were approximately 100 creditors holding 225 claims, totaling approximately $10 Million. *See In re Perkins*, 71 B.R. at 296. The Debtor's estate is similar to that in the *Perkins* case - the Debtor's Schedules reflect $7.9 Million in liabilities. In addition, there are over 100 creditors and parties-in-interest. As such, an extension is warranted.

### C. The Debtor Can Reorganize, If Necessary

Throughout the Opposition, TAT argues that even if the Debtor is successful on the TAT Appeal the Debtor will be unable to successfully reorganize. To support its assertions, TAT misleadingly claims, at page 4, lines 1-3 of the Opposition, that the Debtor has admitted that even if the TAT Appeal is successful, "if it cannot negotiate with the creditors other than TAT and Sands, it will have to convert the case!" The Debtor has not indicated anything remotely similar to what the Opposition attributes to the Debtor. Rather, at paragraph 21, lines 6-8 of the Motion, the Debtor provides, in discussing success of the TAT Appeal:

> if the Debtor is successful on the TAT Appeal, approximately $6.5 Million dollars of its currently scheduled debts will be eliminated and it may be more economical for the Debtor to dismiss the case and negotiate with its remaining creditors than to draft, file, solicit and confirm a plan. If the Debtor is unsuccessful, the Debtor may be forced to convert the case to chapter 7 or sell its assets pursuant to a 363 sale, among other things.

The quote clearly refers to the possibility of conversion if the TAT Appeal is unsuccessful. If the TAT Appeal is successful, the Debtor can then decide whether to file a plan or negotiate with creditors outside bankruptcy.[2]

In any event, with respect to the alternatives available to the Debtor in the event it is unsuccessful on the TAT Appeal, the Debtor believes that it can obtain sufficient funding to fund a confirmable and successful chapter 11 plan. Plan terms will necessarily depend upon the outcome of

---

[2] The Opposition's reading requires one to assume that if the Debtor is successful on the TAT Appeal, the Debtor will dismiss the case, negotiate with its remaining creditors and, if those negotiations are unsuccessful, refile a chapter 11 case and then convert that second case to chapter 7. The Opposition's reading is nonsensical and outright misleading.

Case: 10-60334 Doc# 70 Filed: 01/27/11 Entered: 01/27/11 13:39:24 Page 4 of 6

K:\ZF Mirco Solutions\Pld\Mot- Exclusivity\Reply\Replyv4.docx    3    REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPTIAL PARTNERS, LTD. IN OPPOSITION TO . . . .

the TAT Appeal and the Cross Action as each may significantly alter the Debtor's liabilities and assets. Assuming however that the Debtor is unsuccessful on the TAT Appeal, possible plan alternatives include, without limitation, either a liquidating plan or a reorganizing plan that will pay its allowed secured claims in full and eliminate most if not all unsecured debt. Of the unsecured debt, approximately $6.5 Million is held by TAT and Sands. (the "<u>Judgment Debt</u>") and approximately $1.5 Million is held by other creditors ("<u>Non Judgment Debt</u>"). With respect to allowed unsecured claims, the Debtor anticipates a plan with multiple classes made up of the different types of unsecured debt. It is anticipated that all classes will be impaired and that at least one impaired class entitled to vote will vote to accept the plan. With respect to the unsecured Judgment Debt, the Debtor may propose a cram down plan impairing TAT and Sands and paying pennies on the dollar, if anything. With respect to the Non Judgment Debt, the Debtor believes it can confirm a plan that addresses such claims as follows: (1) certain of the Non Judgment Debt is based on various counsels' contingency fees and need only be paid if the Debtor is successful on the TAT Appeal and/or the appeal of an unrelated insurance suit; (2) certain of the Non Judgment Debt is held by insiders which the Debtor anticipates will be forfeited voluntarily; (3) certain of the Non Judgment Debt is held by various non-insider parties that loaned funds to the Debtor which the Debtor will either pay pennies on the dollar, if anything, or convert to stock; and (4) certain of the Non Judgment Debt is held by general unsecured non-insider trade creditors and is sufficiently minimal that the Debtor believes it can classify such claims as an administrative convenience class and pay such creditors approximately 50 cents on the dollar.[3]

### D. TAT's Statistical Analysis of the TAT Appeal is Irrelevant.

The Opposition fails to address much less focus on the issue before this Court – cause to extend exclusivity. Instead TAT provides an irrelevant declaration by one of its attorneys opining on the statistical probability of the Debtor's success on the TAT Appeal. First, the declaration and statistics are irrelevant - in this circuit, cause is determined based upon the *Dow Corning* factors, not statistical probabilities of pending appeals. *See Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem. Hosp. (In re Henry Mayo Newhall Mem. Hosp.),* 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002). "A variety of matters probative of § 1121(d) "cause" are standardly considered." *Id*.

---

[3] The Debtor reserves its right to propose a plan on different terms than those identified in this Reply.

Case: 10-60334  Doc# 70  Filed: 01/27/11  Entered: 01/27/11 13:39:24  Page 5 of 6

K:\ZF Mirco Solutions\Pld\Mot- Exclusivity\Reply\Replyv4.docx

4

REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES OF TAT CAPTIAL PARTNERS, LTD. IN OPPOSITION TO . . . .

*(c*iting *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) and *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D Tex. 1996)).[4]  Second, the declaration is not admissible and the Debtor objects to its introduction into evidence.  TAT has not laid a foundation of admissibility.  Attorney Kenefick is not an expert on statistical analysis of appeals – he is TAT's attorney.  Finally, even if the Debtor is unsuccessful on the TAT Appeal, the Debtor believes it will be able to sell its assets, reorganize under chapter 11 or liquidate successfully.

### E. Resolution of the TAT Appeal by the Expiration of the Requested Extension

TAT argues and testifies in its supporting declaration that the TAT Appeal will be in the 90th percentile of all appeals and thus not resolved before the expiration of the requested extension.  However, TAT provides no evidence to support this assertion nor has TAT laid a foundation for the declaration's admissibility.  Not only is Attorney Kenefick not qualified to offer such testimony, TAT does not provide any evidence regarding the types of cases or appeals that make up the 90th percentile, why such cases are similar to the TAT Appeal or why the TAT Appeal would deviate so greatly from the median.  Moreover, the statistics provided by TAT also indicate that an opinion could be rendered within the requested Exclusivity Periods.

### F. Debtor's Willingness to Compromise

The Opposition repeatedly alleges that the Debtor is not willing to negotiate with TAT.  This statement is untrue and the Debtor has been and continues to be open to settlement of the TAT Appeal and the Cross Action.

## II. CONCLUSION

WHEREFORE, for the foregoing reasons, the Motion should be granted.

Dated: January 27, 2011  **MURRAY & MURRAY**
A Professional Corporation

By: */s/ Jenny Lynn Fountain*
Jenny Lynn Fountain
Attorneys for Debtor

---

[4] The *Dow Corning* factors are outlined and independently addressed in the Motion.